UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN K. LUMBARD,

        Petitioner,                        Case No. 1:16-cv-1411

v.                                             Honorable Janet T. Neff

SHIRLEE HARRY,

        Respondent.
_____/

**<u>OPINION</u>**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition because Petitioner's claim for relief is procedurally defaulted.

**Factual Allegations**

Petitioner Nathan K. Lumbard is presently incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. Petitioner is serving a sentence of 5 years, 11 months to 15 years' imprisonment following his guilty plea in the St. Joseph County Circuit Court to a charge of breaking and entering a building with intent to commit a felony, MICH. COMP. LAWS § 750.110. Petitioner is serving two additional sentences of 5 years, 11 months to 15 years imposed by the St Joseph County Circuit Court following his plea of nolo contendere to another charge of breaking and entering a building with intent to commit a felony and a charge of second-degree arson, MICH. COMP. LAWS § 750.73. Petitioner was sentenced as an habitual offender, MICH. COMP. LAWS § 769.10. All of the sentences are being served concurrently with each other.

As part of the plea bargain, Petitioner secured the trial court's statement that his Michigan sentences would not only be concurrent with each other, but that they would be concurrrent with sentences previously imposed. (Status Hrg. Tr., ECF No. 3-1, PageID.38-39.) Whether or not that statement carried through to Petitioner's plea and sentencing is impossible to determine from Petitioner's filings in this Court because the transcripts of those proceedings have not been provided.

The prior sentences were imposed by the United States and the State of Indiana. Petitioner came to St. Joseph County from the State of Indiana. In that state, on June 5, 2013, the LaGrange County Circuit Court imposed concurrent sentences of 6 years' imprisonment on two counts of criminal recklessness. (Mot. For Expediting Proceedings, ECF No. 3, PageID.28-29.) Although Petitioner's Indiana sentences were concurrent with each other, the LaGrange County

Circuit Court ordered that they be served consecutive to Petitioner's federal sentence and to any possible Michigan sentence(s). (*Id.*)

Before Petitioner was prosecuted in Indiana, he had entered a plea of guilty in this Court to a charge of making a false statement in a United States passport application, 18 U.S.C. § 1542, and to a charge of aggravated identity theft, 18 U.S.C. § 1028A(a)(1) and (c)(4). *See United States v. Lumbard*, 1:10-cr-388 (W.D. Mich. Feb 10, 2012) (Amended Order and Judgment, ECF No. 42.) The Court imposed consecutive 2-year sentences on the two counts for a total term of imprisonment of 4 years. *Id.* (Sentencing Tr., ECF No. 44.) Plaintiff was sent to F.C.I. Ashland in Kentucky to serve his sentence. *See Lumbard v. St. Joseph County Sheriff's Department*, No. 1:15-cv-1013 (W.D. Mich.) (Compl., ECF No. 1, PageID.5.)

After Petitioner was sentenced in February of 2014, he was returned to F.C.I. Ashland. He remained there for several months, but on July 8, 2014, he was transferred to the custody of the Michigan Department of Corrections to serve his Michigan sentences.

Apparently, when Petitioner was transferred to the Michigan Department of Corrections, he realized that the inconsistency between what the Indiana court said about whether his sentences were concurrent and consecutive and what the Michigan court said about whether his sentences were concurrent or consecutive might operate to his detriment. Petitioner describes his understanding of the Michigan plea deal in his memorandum supporting the petition: "It was [Petitioner's] understanding that while serving his sentences in either federal or Indiana prisons he would also be serving his Michigan sentence."  (Mem., ECF No. 2, PageID.24.)  By virtue of Petitioner's Michigan plea agreement, Michigan would accept the time he served in the federal or Indiana prison, but it was not clear whether the federal bureau of prisons would count the time he

-3-

served in a Michigan correctional facility and it was expressly stated that the Indiana Department of Corrections would not count the time he served in a Michigan correctional facility. Petitioner states the problem as follows: "By Michigan making [Petitioner] serve his sentence in Michigan first he must serve additional time in Indiana because Indiana has no agreement to run their sentence concurrent with Michigan." (*Id*., PageID.24-25.)

Contending that, under these circumstances, the state had failed to fulfill its promises made in plea bargaining, Petitioner attempted to withdraw his plea. Petitioner's appointed appellate counsel filed the motion to withdraw the plea, but counsel withdrew from representing Petitioner at the hearing because counsel thought it inadvisable to put Petitioner into his original pretrial position. (Mem., ECF No. 2, PageID.18.) The trial court appointed new appellate counsel. (*Id*.) That counsel withdrew at the second scheduled hearing on the motion to withdraw guilty plea for the same reason. (*Id*.) Petitioner sought appointment of new counsel, but the trial court denied his motion and the trial court never ruled on the motion to withdraw Petitioner's plea. (*Id*.)

Petitioner proceeded pro se on appeal. More than eighteen months after his sentencing, he filed a delayed application for leave to appeal raising the "unfulfilled promise" issue. (*Id*., PageID.18-19.) At that time, because the trial court never ruled on the motion to withdraw plea, the only issue Petitioner could timely appeal was the July 14, 2015, trial court order denying Petitioner the appointment of new appellate counsel.[1]

---

[1] Michigan Court Rule 7.205 provides that an application for leave to appeal must be filed within 21 days after entry of the judgment, order or decision appealed. With limited exceptions not applicable here, the Michigan Court of Appeals may not grant leave on delayed applications filed more than six months after the decision appealed. MICH. CT. R. 7.205(G).

The Michigan Court of Appeals dismissed the appeal:

> The Court orders the delayed application for leave to appeal is DISMISSED for lack of jurisdiction because the issue raised in the delayed application does not arise from the order appealed. *People v. Anderson*, 531 N.W.2d 780 ([Mich. Ct. App.] 1995).

*People v. Lumbard*, No. 329178 (Mich. Ct. App. Oct. 19, 2015) (parallel citation omitted). Petitioner applied for leave to appeal in the Michigan Supreme Court. That court denied leave on May 2, 2016. *People v. Lumbard*, 877 N.W. 2d (Mich. 2016). Petitioner did not petition for certiorari in the United States Supreme Court.

After Petitioner filed his application for leave to appeal in the Michigan Supreme Court, but before that court denied his application, Petitioner filed a motion for relief from judgment in the trial court under MICH. CT. R. 6.500 *et. seq.*, raising the same issue he raised in the Michigan appellate courts. By order entered January 13, 2016, the trial court denied relief for two reasons. First, the trial court denied relief because the issue was still before the Michigan Supreme Court for review. *People v. Lumbard*, Nos. 13-18683-FH, 13-18686 (St. Joseph Cty. Cir. Ct., Jan. 13, 2016) (App. B, ECF No. 3-2, PageID.44-45.) Second, the trial court denied relief because "[t]he Court made it clear that [Petitioner] would not get credit for time served on the Indiana charges."[2] (*Id.*) Petitioner did not apply for leave to appeal the trial court's denial of his motion for relief from judgment to either Michigan appellate court. Instead, on December 9, 2016, Petitioner filed his petition in this Court raising the same single issue he raised in the state courts:

---

[2] It is not clear whether the trial court's statement that Petitioner would not get credit for time served on the Indiana charges is the equivalent of stating that time served in Indiana after sentencing would not count toward his Michigan sentence. In the transcript of the December 23, 2013, status hearing (App. A., ECF No. 3-1, PageID.34-42.), the trial court distinguishes between sentences from different jurisdictions running concurrently, on the one hand, and credit for time already served, on the other hand. Petitioner never served any time on his sentences in Indiana *after* his conviction and sentences in Michigan. Accordingly, it is impossible to determine if the trial court was referring to anything other than jail-credit for time already served at the time of Petitioner's Michigan plea when he makes his statement regarding time served in Indiana.

Appellant's plea which was induced by an unfulfilled promise to run the sentence concurrent with [his] federal and Indiana sentences renders the plea involuntary in violation of Appellant's due process right. US Const Amends V & XIV.

(Pet., ECF No. 1, PageID.7.)

## Discussion

### I.     Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277-78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993). It appears that Petitioner has satisfied the substantive component of fair presentation.

With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v.*

*Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. April 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. August 16, 1996). On his direct appeals, Petitioner has failed to satisfy the procedural component of fair presentation. Petitioner presented the issue regarding unfulfilled plea bargain promises to the Michigan Court of Appeals by seeking leave to appeal an order entered more than eighteen months after his plea and sentence, an order that was entirely unrelated to his plea or sentence. Consideration of the merits of Petitioner's claim was so procedurally inappropriate that consideration of its merits was highly unlikely. The only decision the court of appeals made was that the procedural posture deprived the court of jurisdiction to hear Petitioner's challenge. That was the only decision the Michigan Supreme Court declined to review.

Petitioner has since presented his "unfulfilled promise" issue to the state court by way of his motion for relief from judgment. That presentation was also procedurally flawed in that it preceded the Michigan Supreme Court's decision on Petitioner's "direct" appeal; however, the trial court considered the claim on its merits. Petitioner failed to seek leave to appeal the merits denial of that motion in either the Michigan Court of Appeals or the Michigan Supreme Court. The time for seeking leave to appeal that decision; however, has long passed. *See* note 1, *infra*.

In short, Petitioner has failed to fairly present his federal constitutional challenge to the state courts. An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Exhaustion is only a problem; however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

## II. Procedural default

If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*. *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. Therefore, Plaintiff has no available remedy. At this juncture, the Court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160. To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim. *Gray*, 518 U.S. at 162. Further, where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

### A. Cause

Petitioner offers no "cause" for his failure to appeal the trial court's denial of his motion for relief from judgment under MICH. CT. R. 6.500 *et seq.* Therefore, prejudice need not be considered. Nonetheless, it is apparent that Petitioner cannot show prejudice here.

B.       Prejudice

Prejudice requires the Petitioner to show that the alleged error "worked to his *actual and substantial disadvantage*." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "'[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of Petitioner's guilt and a lack of evidence to support his claim.'" *Perkins*, 58 F.3d at 219 (quoting *Rust*, 17 F.3d at 161-62).

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).

The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements are contractual in nature. In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

> One fundamental principle of contract interpretation is that "primary importance should be placed upon the words of the contract. Unless expressed in some way in the writing, the actual intent of the parties is ineffective, except when it can be made the basis for reformation of the writing." 11 Williston on Contracts § 31:4 (4th ed. 2000). Consistent with the principle articulated by Williston, this court has held that the state will be held to the literal terms of the plea agreement.

*Id.* (citing *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990)). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002).

Petitioner contends that his pleas were involuntary and unknowing or, alternatively, that the State of Michigan breached the plea agreement, by failing to make all of his sentences from Michigan, Indiana, and the United States, run concurrently. The precise nature of the State of Michigan's constitutionally violative conduct is difficult to grasp. Petitioner describes it as follows:

> Petitioner believed that by pleading guilty his sentences would run concurrent with both federal and Indiana sentences. It was his understanding that while serving his sentence in either federal or Indiana prisons he would also be serving his Michigan sentence. By Michigan making him serve his sentence in Michigan first he must serve additional time in Indiana because Indiana has no agreement to run their sentence concurrent with Michigan. Petitioner will serve an additional 6-years because when he is released from Michigan prison Indiana will require him to serve a sentence in their prison.

(Mem., ECF No. 2, PageID.24-25.)

To the extent Petitioner complains that the State of Michigan breached a promise to permit Petitioner to serve his sentences in Indiana or federal prison first, he offers no facts to support the existence of such a promise. In the absence of such an agreement, "a defendant who has violated both federal and state criminal statutes has no constitutional right to determine the order of his sentences." *Tinsley v. United States*, No. 95-5564, 1997 WL 63156 *4 (6th Cir. Feb. 12, 1997) (citations omitted).

Moreover, the State of Michigan does not have the sovereign authority, without the cooperation of the federal government or the State of Indiana, to determine the order in which Petitioner will serve his sentences. In *Ponzi v. Fessenden*, 258 U.S. 254, 260-262 (1922), the Supreme Court recognized the doctrine of primary custody, to provide an orderly method of prosecuting an individual who has violated the law of more than one sovereign. The primary custody doctrine provides that the sovereign that first arrests an individual has primary control over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another sovereign; and it retains this priority until it has relinquished its jurisdiction to some other sovereign. *Id.*, *see also United States v. Collier*, 31 F. App'x 161, 162 (6th Cir. 2002). The fact that the federal government released Petitioner to be prosecuted in Indiana, and then Michigan, did not relinquish the federal government's primary custody. *See e.g. Ruff v. Butler*, No. 6:15-6-DLB, 2016 WL 1452375 *7 (E.D. Ky. Apr. 13, 2016). When those prosecutions were complete, Petitioner returned to federal prison because the federal government had primary custody.

Apparently, the federal government relinquished its primary custody to the State of Michigan by mutual agreement. Petitioner does not identify any plea promise that precludes such

an agreement. Indeed, so long as the State of Michigan counted the federal time Petitioner served between February and July of 2014 toward his Michigan sentences, the State of Michigan fulfilled its end of the bargain with respect to "concurrent sentences." That is all that Michigan can do. It can accept the time Petitioner serves in federal prison or an Indiana prison towards the Michigan sentence. The State of Michigan cannot; however, compel the State of Indiana or the United States to accept the time Petitioner serves in Michigan towards the sentences imposed by those sovereigns. *See United States v. Wheeler*, 435 U.S. 313, 320 (1978) ("State and Federal Governments '[derive] power from different sources' . . . [e]ach has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'") (citations omitted). To argue that the State of Michigan, by way of its plea agreement with Petitioner, agreed to circumvent the authority of the federal government, or the government of another sovereign state, would be contrary to clearly established law. *Ford v. Turner*, No. 5:13CV00571, 2015 WL 413889 *6 (N.D. Ohio, Jan. 30, 2015).

Critically, based on Petitioner's description of the problem quoted above, it is apparent that Petitioner had a sufficient understanding of this issue at the time of his plea and sentencing. Under these circumstances, even if Petitioner could establish cause, he cannot show prejudice, because his own presentation of the issues indicates that the state fulfilled its obligations under the plea agreement and the plea agreement was voluntarily and knowingly made. Accordingly, I conclude that Petitioner's claim is procedurally defaulted.[3]

---

[3] Petitioner also has not demonstrated that manifest injustice would result if the Court does not consider his claim because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495). Petitioner makes no claim of innocence here.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because the claim Petitioner seeks to raise is procedurally defaulted.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   January 10, 2017              /s/ Janet T. Neff
                                       Janet T. Neff
                                       United States District Judge